

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

DEC 19 2011

CLERK, U.S. DISTRICT COURT
by_____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE:                              §
                                    §
PILGRIMS PRIDE CORPORATION,         §   Bankruptcy Court Case
                                    §   No. 08-45664-dml11
            Debtor.                 §
                                    §
_____     §
                                    §
CLINTON GROWERS, ET AL.,            §
                                    §
            Applicants,             §
                                    §   District Court Case
VS.                                 §   No. 4:11-CV-333-A
                                    §
PILGRIM'S PRIDE CORPORATION,        §
ET AL.,                             §
                                    §
            Appellees.              §

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the appeal of a group of

persons known as the "Clinton Growers" from rulings of the

bankruptcy court in the above-captioned bankruptcy case summarily

denying their proofs of claim in bankruptcy.  The persons

referred to herein as the Clinton Growers are listed in the

exhibit that is an attachment hereto.  The court has concluded

that the rulings of the bankruptcy court, as set forth in the

document titled "Final Order on Clinton Growers' Claims" entered

in the bankruptcy case on February 11, 2011, R. at 8-15, denying

the Clinton Growers' claims in bankruptcy against Pilgrim's Pride

Corporation should be affirmed.

The bankruptcy court ruled in favor of the debtors,

Pilgrim's Pride Corporation, PSF Distribution Company, PPC

Transportation Company, To-Ricos, Ltd., To-Ricos Distribution,

Ltd., Pilgrim's Pride Corporation of West Virginia, and PPC

Marketing, Ltd. ("Debtors"), on two theories--first, that the

bankruptcy court was bound by the law-of-the-case doctrine to

rule for Debtors by reason of rulings made by United States

District Judge Terry R. Means in City of Clinton, Ark. v.

Pilgrim's Pride Corp., 654 F. Supp. 2d 576, 544-45 (N.D. Tex.

2009), and, second, even if the law-of-the-case doctrine does not

apply, the promissory estoppel theory of recovery urged by

Clinton Growers (their sole remaining theory in support of their

bankruptcy claims) is legally unmeritorious under facts

established without dispute in the record on which the bankruptcy

court acted.

Clinton Growers' contentions on appeal amount to the

propositions that the bankruptcy court erred in holding that the

law-of-the-case doctrine applies and in applying that doctrine as

a basis for denial of their claims, and that the bankruptcy court

erred in its conclusion that denial of the claims was justified

because the record established as a matter of law that Clinton

Growers' promissory estoppel claims lack legal merit.   R. at 8-15.

Debtors filed several motions for partial summary judgment, each directed to an aspect of one of the three theories of recovery urged by Clinton Growers in their proofs of claim in bankruptcy.   R. at 4009 (summary of bases for proofs of claim); R. at 9-11 (final order listing the theories of recovery asserted by Clinton Growers and motions for partial summary judgement filed by Debtors).   Clinton Growers admitted the merits of the motions for partial summary judgment as to two of their three theories of recovery; and, the bankruptcy court granted the motions as to those two theories.   R. at 7429, 7432 (orders granting motions for partial summary judgment as to Clinton Growers' causes of action based on fraud or deceit, fraudulent inducement, and constructive fraud and their cause of action based on alleged violations of the Arkansas Livestock and Poultry Contract Protection Act).

The remaining theory of recovery advanced by Clinton Growers, promissory estoppel, was the subject matter of the bankruptcy court's ruling from which Clinton Growers have appealed.   R. at 8-15 (final order); R. at 3983-4005 (memorandum opinion).   Six of the motions for partial summary judgment were directed to Clinton Growers' promissory estoppel theory, one

focusing on the parol evidence rule, another on the statute of frauds, another on merger, another on statute of limitations, another on absence of actionable promises on which Clinton Growers could justifiably rely, and the final on barred by contract.  R. at 10.  The bankruptcy court's memorandum opinion says that the bankruptcy court was granting its relief based on the merger motion.  R. at 3983 n.1, 4005.  Because of the bankruptcy court's granting of the merger motion, the bankruptcy court concluded that the remaining motions were moot.  R. at 4005.  In the final order, the bankruptcy court granted the merger motion, but none of the others.  Id.  However, the explanation the bankruptcy court gave in its memorandum opinion as why Arkansas law compelled a rejection of Clinton Growers' promissory estoppel theory seems to say that the bankruptcy court has accepted Debtors' arguments that the promissory estoppel theory is not viable by reason of the contract bar urged by one of the motions as well as the merger bar urged by the motion the bankruptcy court expressly granted.

Undoubtedly conscious of the ability of this court to affirm the bankruptcy court's ruling on any ground supported by the record, Clinton Growers assign in their brief as issues to be resolved on the appeal each of the theories urged by Debtors in the bankruptcy court as to why Clinton Growers cannot

successfully assert promissory estoppel.  Br. of Appellants at 1.

Appellees responded in kind, agreeing that Clinton Growers'

statement of the issues was accurate, Br. of Appellees at 1, and

by providing responsive argument as to each of those issues.

In this memorandum opinion the court expresses its

conclusion that promissory estoppel is not a viable theory of

recovery for two reasons--because it is barred by reason of the

existence of a contract between the parties dealing with the same

subject matters of the statements upon which the estoppel theory

is based and because the merger language in the contracts

prohibits reliance on the extra-contractual statements Clinton

Growers urge in support of their promissory estoppel theory.

While the court finds persuasive the arguments and authorities

presented by Debtors in support of their other reasons why

promissory estoppel cannot successfully be asserted, the court

chooses to limit its discussion to the merger and barred-by-

contract issues.

The bankruptcy court and Debtors make persuasive arguments

in support of the bankruptcy court's law-of-the-case ruling, but

the court has reservations as to whether that doctrine is

applicable.  Consequently, the court chooses not to base the

court's affirmance of the bankruptcy court's judgment on law of

the case.  For the reasons given below, the court has no

misgivings about the bankruptcy court's denial of Clinton

Growers' claims on the ground that the record establishes as a

matter of law that Clinton Growers' promissory estoppel theory is

without merit.

The bankruptcy court's December 15, 2010, memorandum opinion

correctly and adequately described in all material respects the

procedural history and undisputed factual background.  R. at

3983-88.  The contract, which is titled "Pilgrim's Pride

Corporation Broiler Production Agreement," between each of the

Clinton Growers and Pilgrim's Pride Corporation has essentially

the same terms and provisions as the other contracts.  The terms

and provisions that have potential relevance to the viability of

Clinton Growers' promissory estoppel claims are as follows:

1.    Under the heading "Engagement of the Independent

Grower,"[1] the contract provides that "[s]uch agreement is to

continue unless terminated in accordance with the provisions

. . . contained" in the agreement.  R. at 2045, ¶ A.

2.    Under the heading "Term, the contract provides

that:

> The term of this Agreement shall commence on
> the date of execution of this Agreement, continue
> on a flock to flock basis, and shall terminate
> upon completion of the engagement(s) subject to

---

[1]The Clinton Growers are called "Independent Growers" in the contract.

the right of the Company to terminate this
Agreement upon written notice to the Independent
Grower in the event the Independent Grower does
not timely perform its objections hereunder as
provided in this Agreement.

Id., ¶ C.

3.    Under the heading "Termination," the contract

provides:

Either the Independent Grower or the Company
shall have the right to terminate this Agreement
and its Exhibits without any need for cause
provided that written notice is given after a
flock is settled and before a new flock is placed.
Written notice from the Independent Grower should
be given to the Live Production Manager or Broiler
Manager.   Written notice shall be given from the
Company to the Independent Grower.   Termination
during a flock shall be in accordance with the
other terms of this Agreement.   Should such
termination occur, the Company agrees to pay the
Independent Grower for all services performed
until termination of this Agreement, and the
Independent Grower agrees to perform all
obligations until termination of this Agreement.
Once notice has been given by either party to
terminate, the Company will not deliver new
chicks, nor will the Independent Grower accept new
chicks.   Except for cause or economic necessity,
Company will not terminate this Agreement without
first requiring Independent Grower to follow the
"Cost Improvement Program" as described in Exhibit
B.

Id., ¶ D.

4.    Under the subheading "Prior Agreements/Entire

Agreement," the contract provides:

This agreement supersedes, voids and
nullifies any and all previous Broiler Production

Agreements and all other previous agreements
governing the relationship between Independent
Grower and Company.  The Independent Grower and
Company hereby release and extinguish all claims
that they may have against each other under any
previous Broiler Production Agreement and all
other previous agreements governing the
relationship between Independent Grower and
Company.  This Agreement, and any Exhibits hereto,
constitute the entire agreement between the
parties, and those documents supersede all oral
statements and other communications made before
the execution of those documents.  Independent
Grower acknowledges that in entering into this
Agreement, he/she has not relied upon any
statements that are not contained in this
document, and/or the Exhibits hereto.

R. at 2047-48, ¶ H.9).

5.    Under the subheading "No Modification Except in

Writing," the contract provides:

The parties agree that this Agreement and the
Exhibits hereto may not be modified except in
writing signed by both the Company and Independent
Grower.

Id., ¶ H.12).

6.    Under the subheading "Exclusion of Incidental,

Consequential, and Certain Other Damages," the contract

provides:

TO THE MAXIMUM EXTENT PERMITTED BY LAW, NEITHER
THE COMPANY NOR INDEPENDENT GROWER SHALL BE LIABLE
TO ONE ANOTHER FOR ANY SPECIAL, INCIDENTAL,
INDIRECT, CONSEQUENTIAL, EXEMPLARY OR NON-
COMPENSATORY DAMAGES WHATSOEVER ARISING OUT OF OR
IN ANY WAY RELATING TO THIS AGREEMENT AND/OR ITS

8

EXHIBITS, AND/OR THE PERFORMANCE OF THE PARTIES
UNDER THIS AGREEMENT AND/OR ITS EXHIBITS.

Id., H.13).

7.    Under the subheading "Choice of Law and Venue,"
the agreement provides that the "substantive laws of the
State in which the farm is located shall govern the
interpretation of this Agreement . . . ." Id., ¶ H.17).

Clinton Growers maintain that, notwithstanding the
provisions of their respective contracts with Pilgrim's Pride
Corporation, each of them should recover from Debtors based on a
statement or statements made to the grower by one or more
employees of Pilgrim's Pride Corporation (or of its predecessor)
such as, or similar to, that the grower "would receive chickens
as long as he met the company's requirement" and that they were
"here for the long haul."  Each of the Clinton Growers maintains
that he took such statement or statements to mean that the
grower's contract with Pilgrim's Pride Corporation would continue
in effect for at least a sufficient length of time to enable the
grower to recoup through income from the contract the cost of
making the necessary preparations for performance under the
contract.

All farms of the Clinton Growers were located in the State
of Arkansas.  The law of Arkansas appears to be quite clear that

promissory estoppel applies only when the elements of a contract cannot be shown.  See Skallerup v. City of Hot Springs, 309 S.W.3d 196, 201 (Ark. 2009).  Another holding of the Supreme Court of Arkansas that illustrates the extent to which Arkansas law allows the existence of a contract to insulate the contracting parties from extra-contractual claims is Lowell Perkins Agency, Inc. v. Jacobs, 469 S.W.2d 89 (Ark. 1971).  In Lowell, the Arkansas Supreme Court made clear that Arkansas "law never accommodates a party with an implied contract when he has made a specific one on the same subject matter," id. at 93, citing to authorities to the effect that the doctrine of unjust enrichment or recovery in quasi-contract applies only to situations where there is no legal contract and that, generally, where there is an express contract, the law will not imply a quasi or constructive contract, id. at 92-93.  The Arkansas Supreme Court quoted with approval from 17 C.J.S. Contracts § 6, p. 574, that "[a] quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties, however harsh the provisions of such contract may seem in the light of subsequent happenings."  Id. at 92.  See also Farmer's Coop. Ass'n v. Garrison, 454 S.W.2d 644, 647-48 (Ark. 1970).

The decisions of intermediate appellate courts of Arkansas seem uniformly to apply the rule announced by the Arkansas Supreme Court that promissory estoppel may be a basis for recovery only when formal contractual elements do not exist.  See Moore v. Keith Smith Co., Inc., No. CA 08-884, 2009 Ark. App. LEXIS 283, at *13 (Ark. App. May 6, 2009) ("Promissory estoppel is not to be used as a vehicle to engraft a promise on a contract that differs from the written terms of the contract."); Taylor v. George, 212 S.W.3d 17, 25 (Ark. App. 2005) ("Promissory estoppel may be a basis for recovery only when formal contractual elements do not exist."); MDH Builders, Inc. v. Nabholz Constr. Corp., 17 S.W.3d 97, 101 (Ark. App. 2000) (holding that there was no need to explore whether the plaintiff proved entitlement to relief on an extra-contractual theory inasmuch as the trial court correctly found that a contract existed between the plaintiff and defendant).  See also Glenn Mech. v, S. Ark. Reg'l, 278 S.W.3d 583, 587 (Ark. App. 2008).

In Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923 (8th Cir. 1999), the Eighth Circuit provided the following explanation as to the status of Arkansas law on the subject under discussion:

> Arkansas courts have permitted parties to assert the
> doctrine of promissory estoppel as an alternative to
> breach of contract in the absence of consideration or

as a means of overcoming a statute of frauds defense.
The courts of Arkansas thus have applied the doctrine
in order to overcome deficiencies in the formation of
an enforceable contract, <u>but have not applied it in
order to determine the parties' rights under a contract
that is otherwise enforceable. Their failure to do so
reflects the widely accepted principle that promissory
estoppel is applicable only in the absence of an
otherwise enforceable contract</u>.

180 F.3d at 934 (citations omitted, emphasis added).  A recent

United States District Court decision interpreting Arkansas law

noted that:

> As repeatedly stated by the Arkansas Supreme Court, the
> law never accommodates a party with an implied contract
> when he has made a specific [one] on the same subject
> matter.  The Arkansas Supreme Court has also held that
> promissory estoppel may be a basis for recovery <u>only</u>
> when formal contractual elements do not exist.

<u>Billingsley v. Weyerhaeuser Co.</u>, No. 4:09-cv-04040, 2010 U.S.

Dist. LEXIS 95254, at *13 (W.D. Ark. Aug. 24, 2010) (quotation

marks & citations omitted), <u>adopted by</u> 2010 U.S. Dist. LEXIS

(W.D. Ark. Sept. 10, 2010).

While the court is not giving law-of-the-case effect to the

rulings of Judge Means in <u>City of Clinton</u>, the court finds that

the first reason given by Judge Means for rejecting the

promissory estoppel theory advanced by the poultry growers in

that case is persuasive and equally applicable to the promissory

estoppel theory advanced by Clinton Growers in support of their

claims in bankruptcy in this same bankruptcy case in which Judge

Means made his <u>City of Clinton</u> ruling.

The law of Arkansas on the effect of the merger doctrine is

that it prevents reliance by a contracting party on extra-

contractual statements or representations.   In <u>Farm Bureau</u>

<u>Insurance Co. v. Running M Farms</u>, the Arkansas Supreme Court

explained:

> [T]his court has said that "[w]hen two parties have
> made a contract and have expressed it in a writing to
> which they have both assented as the complete and
> accurate integration of that contract, evidence,
> whether parol or otherwise, of antecedent
> understandings and negotiations will not be admitted
> for the purpose of varying or contradicting the
> writing." <u>U.S. Rubber v. Northern</u>, 236 Ark. 381, 384,
> 366 S.W.2d 186, 188 (1963); see also <u>Ultracuts Ltd. v.</u>
> <u>Wal-Mart Stores, Inc.</u>, 343 Ark. 224, 232, 33 S.W.3d
> 128, 134 (2000) (holding that "[i]t is a general
> proposition of the common law that in the absence of
> fraud, accident or mistake, a written contract merges,
> and thereby extinguishes, all prior and contemporaneous
> negotiations, understandings and verbal agreements on
> the same subject.")

237 S.W.3d 32, 37 (Ark. 2006).   <u>See also</u> <u>Hagans v. Haines</u>, 984

S.W.2d 41, 44 (Ark. App. 1998); <u>Stevens v. Ark. Power & Light</u>

<u>Co.</u>, 124 S.W.2d 972, 973, 975 (Ark. 1939).

No plausible argument can be made that the statements on

which Clinton Growers rely in support of their promissory

estoppel theory are not directly dealt with in their broiler

production contracts.   The subjects of those statements are

express elements of the contracts.  The contracts could not have been more specific and complete on the subjects of the terms of the contract and circumstances that would cause the contracts to terminate.  Nor could they have been any more specific and complete in their provisions that the written documents constituted the entire agreement between the parties, and that they superseded all oral statements and other communications made before the execution of the contracts.  The contracts dealt directly with the possibility that someone would claim a verbal modification after the contract was entered into by providing in each contract that it was not subject to modification except in writing signed by both parties.  The contracts went so far as to provide that the kinds of damages Clinton Growers are asserting against Debtors would not be recoverable.  The Arkansas courts could not have made it any plainer that a promissory estoppel claim under the circumstances existing here would not be viable under Arkansas law.

Aside from significant attention devoted by Clinton Growers in their briefs to their contention that the bankruptcy court erred in giving effect to the law-of-the-case doctrine in its denial of their claims in bankruptcy, the main thrust of their appellate arguments is that the decision of the Arkansas Supreme Court in Tyson Foods v. Davis, 66 S.W.3d 568 (Ark. 2002), is

controlling, and that the rulings in <u>Tyson</u> establish that, at the least, the record on which the bankruptcy court acted presented issues of fact that caused the bankruptcy court's summary rulings against Clinton Growers to be in error.  Br. of Appellants at 12-19, 21-24, 31-33; Reply Br. at 8-18.  The bankruptcy court did not overlook <u>Tyson</u>; rather, it devoted four pages of the opinion to explanations of why <u>Tyson</u> is inapplicable to the legal issues related to the promissory estoppel theory advanced by Clinton Growers.  R. at 3997-4000.  The court concurs with the bankruptcy court's analysis of <u>Tyson</u>, and agrees that none of the <u>Tyson</u> holdings are inconsistent with, or impair, any of the rulings made by Judge Means in <u>City of Clinton</u> or by the bankruptcy court here as to why the promissory estoppel theories urged by the growers in <u>City of Clinton</u> and the instant action is not legally viable.

If, as Clinton Growers seem to contend, the Arkansas Supreme Court in <u>Tyson</u> changed the rule that promissory estoppel applies only when the elements of a contract cannot be shown, that court would not have said, as it did seven years after <u>Tyson</u>, in <u>Skallerup</u> that:

> To the extent that Skallerup argues that estoppel
> applies to the contract obligations asserted, he is in
> error. Promissory estoppel applies when the elements of
> a contract cannot be shown.  Skallerup argues that
> contracts exist in the present case making promissory

estoppel inapplicable. We hold that there is no relief available under either equitable estoppel or promissory estoppel.

Skallerup, 309 S.W.3d at 201 (citation omitted).

The court has given full consideration to all arguments and authorities advanced by Clinton Growers in support of their equitable estoppel theory, and finds none of them persuasive.

Therefore,

The court ORDERS that the order of the bankruptcy court in the above-captioned bankruptcy case entered February 11, 2011, that each and every one of the Clinton Growers take nothing by their claims against Pilgrim's Pride Corporation be, and is hereby, affirmed.

SIGNED December 19, 2011.

JOHN McBRYDE
United States District Judge

16

| No. | Grower Name | Proof of Claim No. |
|-----|-------------|--------------------|
| 1 | Billy E. Appleby | 3885 |
| 2 | Ricky & Debbie Arnold | 3884 |
| 3. | Lillian Bass | 4801 |
| 4. | Bobby D. Beavers | 4800 |
| 5 | Milton & Faith Biggers | 4012 |
| 6. | Phyllis Blackshire | 4011 |
| 7. | Anita J. Taylor f/k/a Anita J. Breshears | 5177 |
| 8 | George Brents | 4001 |
| 9. | Herman K. Brents | 3949 |
| 10 | Kenneth Brents d/b/a Brents Farm LLLC | 3962 |
| 11 | Janie S. & Harold Brown | 4005 |
| 12 | Jerry M. Brown | 4014 |
| 13 | Peggy Bryant | 3894 |
| 14 | Sharon K. Bryant | 3896 |
|  |  |  |
| 16 | Marilyn S. Carr | 3877 |
| 17. | Neal Chism d/b/a Chism Farms | 4015 |
| 18 | Jamie L. & Jana A. Coffman | 4004 |
| 19. | Wayne Cole d/b/a W And J Ranch, Inc | 4802 |
| 20 | Linda J. Cothern | 3942 |
| 21. | Edmund Cunningham | 3898 |
| 22 | Diana & James Curry | 3869 |
| 23. | Phillip A. Desalvo | 4010 |
| 24 | Tony J. Desalvo | 5175 |
| 25. | Barbara J. Dixon | 3998 |
| 26 | Darris & Sarah Dixon dba Darris Dixon Farm | 4007 |
| 27 | Brad J. & Robin Dunlap | 4002 |
| 28 | Carrolyn Dunlap | 3990 |
| 29 | Charles W. Dunlap | 3992 |
| 30 | Jerry J. Dunlap | 3937 |
| 31 | Nell Dunn | 5174 |
| 32. | Burl D. Duvall | 3983 |
| 33 | Jerry D. Duvall | 3938 |
| 34. | Paul W. Duvall | 3931 |
| 35 | Rodney Edwards | 3944 |
| 36 | Angela N. Faulkner | 3882 |
| 37 | Gayle Faulkner | 3879 |
| 38 | Randy W. Findley | 4021 |
| 39 | Christopher K. Flory | 3867 |
| 40 | Darrell K. Flory | 4008 |
| 41 | Michael B. Gadberry | 3946 |
| 42 | Gibson Family Partnership a/k/a Gibso Family Partnership | 4000 |
| 43 | Jerry N. Golden | 3892 |
| 44 | Linda Golden | 3895 |

13

**Exhibit to Memorandum Opinion and Order signed December 19, 2011, in Case No. 4:11-CV-333-A (Page 1 of 3)**

| 45. | William D. & Geraldine Hartman | 4988 |
|---|---|---|
| 46. | William Steve Hartman | 4795 |
| 47. | Joe & Marilyn Hawkins dba J & M Hawkins' Farm, Inc | 3872 |
| 48. | Randy Hayes | 3868 |
| 49. | Alan Hoelzeman | 5179 |
| 50. | Timothy Honeycutt | 3981 |
| 51. | Mary S. Huie | 4793 |
| 52 | Frankie L. Ingram | 3880 |
| 53 | Ronnie L. Jones | 4933 |
| 54 | Scott W. and Deana L. Jones | 3897 |
| 55 | Johnny Joslin | 4017 |
| 56 | L. Shane Kasper | 3920 |
| 57. | Joe E. Keeton | 3934 |
| 58 | Eulina Lay | 3994 |
| 59. | James & Carol Mallett | 3874 |
| 60 | Charles A. Malone | 3991 |
| 61 | Dalton T. Malone | 3933 |
| 62 | Marion Wayne Martin | 3878 |
| 63. | Steve C. Masingill | 3890 |
| 64 | Benny McClaren | 4013 |
| 65 | Eric Q. McClaren | 3996 |
| 66 | Martha E. McClaren | 4405 |
| 67 | Michael B. McNabb | 3947 |
| 68 | Jimmy B. Miller & Charlene M. Miller | 4019 |
| 69 | James Miller Jr | 3873 |
| 70 | Mary R. Miller | 4795 |
| 71 | Mary E. & Charles E. Miller | 4932 |
| 72. | Loretta & Shawna Miller | 3876 |
| 73 | Sherman D. Millsap | 4794 |
| 74 | Doris Peugh | 4016 |
| 75 | Kyle R. Price | 3919 |
| 76 | Gary R. Pulliam | 3883 |
| 77 | Jeremy G. Rainey | 3980 |
| 78 | William D. Roberson | 4797 |
| 79 | Josh Rogers | 3995 |
| 80 | Ralph W. Ruff Jr | 3951 |
| 81 | Sammy Sims | 4915 |
| 82 | Travis L. Sims | 5176 |
| 83 | Paul L. & Linda J. Singleton | 3927 |
| 84 | Benjamin L. & Cleta M. Sommers | 4009 |
| 85 | Frank E. Southard | 3941 |
| 86 | Doug & Carla Spence | 4018 |
| 87 | Dale D. Stracner | 3930 |
| 88 | Roger A. Stratton | 3871 |
| 89 | Roy Sullivan | 4934 |
| 90 | Steve Trafford | 3869 |
| 91 | Julie A. Trigg Ward | 4020 |
| 92 | Troy A. Vang | 3881 |

14

**Exhibit to Memorandum Opinion and Order signed December 19, 2011, in Case No. 4:11-CV-333-A (Page 2 of 3)**

| 93   | Jerri Christy Wallace                      | 4003 |
|------|-------------------------------------------|------|
| 94.  | Mike L. Wallace                            | 3925 |
| 95   | John A. Wesley                             | 3997 |
| 96.  | Thomas W. Whillock                         | 3888 |
| 97   | Billy E. & Charlotte T. Wilchman           | 4405 |
| 98   | Annette & Benny Williams                   | 5178 |
| 99   | David K. Williams                          | 4006 |
| 100  | Greg Williams d/b/a David L. Williams      | 3999 |
| 101. | Terry Williams d/b/a Williams Bros. Farm   | 3886 |
| 102  | Lawrence F. Williams                       | 3921 |
| 103  | Shirley Williams                           | 3891 |
| 104. | Linda S. Wooten                            | 3875 |
| 105  | Rodney N. Wyllia                           | 3870 |
| 106  | Paul Zimmerman                             | 3893 |

15

**Exhibit to Memorandum Opinion
and Order signed December 19,
2011, in Case No. 4:11-CV-333-A
(Page 3 of 3)**